IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANKL LIQUIDATING TRUST, | ) |
| Plaintiff, | ) Case No. 07-cv-10624(JGK) |
| v. | ) **Declaration of T. Michael Guiffré** |
| AIRCAST LLC, AIRCAST HOLDING COMPANY LLC, and DJO, LLC, | ) ECF Case |
| Defendants. | ) |

I, T. Michael Guiffré, hereby declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am a member of the law firm of Patton Boggs LLP, attorneys for Plaintiff ANKL Liquidating Trust herein. I am fully familiar with the facts and circumstances recited herein. I submit this declaration in support of Plaintiff's Opposition to Defendants' Motion to Dismiss the First through Fifth, Ninth and Tenth Claims for Relief.

2. Annexed hereto as Exhibit A are true and correct excerpts of DJO Incorporated's Fiscal Year 2006 SEC Form 10-K (Annual Report), dated March 1, 2007. The entire Form 10-K is available from the SEC at the following website:

http://www.sec.gov/Archives/edgar/data/1157972/000110465907015348/a07-5751_110k.htm

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 30, 2008, in Washington, District of Columbia.

s/ T. Michael Guiffré
T. Michael Guiffré

# EXHIBIT A

# DJO INC

## FORM 10-K
(Annual Report)

### Filed 3/1/2007 For Period Ending 12/31/2006

| | |
|---|---|
| Address | 2985 SCOTT STREET<br>VISTA, California 92081 |
| Telephone | 760-727-1280 |
| CIK | 0001157972 |
| Industry | Medical Equipment & Supplies |
| Sector | Healthcare |
| Fiscal Year | 12/31 |

Powered By EDGAR Online
http://www.edgar-online.com/
© Copyright 2006. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Onlines Terms of Use.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2006**

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from            to           .**

**Commission file number 001-16757**

# DJO INCORPORATED
(Exact name of Registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **33-0978270** |
| (State or other jurisdiction of Incorporation or organization) | (I.R.S. Employer Identification Number) |
| **1430 Decision Street** **Vista, California** | **92081** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: **(800) 336-5690**

Securities registered pursuant to Section 12(b) of the Act:

| **Title of Each Class** | **Name of Each Exchange on Which Registered** |
|---|---|
| **Common Stock, $0.01 Par Value** | **New York Stock Exchange** |

Securities registered pursuant to Section 12(g) of the Act: **None**

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

Yes ☒    No ☐

Indicate by check mark if the Registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.

Yes ☐    No ☒

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒    No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check One):

Large accelerated filer ☒          Accelerated filer ☐          Non-accelerated filer ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes ☐    No ☒

The aggregate market value of all outstanding common equity held by non-affiliates of the Registrant based on the closing price of common stock as reported on the New York Stock Exchange on June 30, 2006 was $834,645,401.

The number of shares of the Registrant's common stock outstanding at February 23, 2007 was 23,440,486 shares.

**Documents Incorporated by Reference**

Portions of the Proxy Statement for the Registrant's 2007 Annual Meeting of Stockholders to be filed with the Commission on or before April 30, 2007 are incorporated by reference in Part III of this Annual Report on Form 10-K. With the exception of those portions that are specifically incorporated by reference in this Annual Report on Form 10-K, such Proxy Statement shall not be deemed filed as part of this Report or incorporated by reference herein.

# DJO INCORPORATED
## FORM 10-K
## TABLE OF CONTENTS

| | | Page No. |
|---|---|---|
| **PART I** | | |
| Item 1. | Business | 3 |
| Item 1A. | Risk Factors | 20 |
| Item 1B. | Unresolved Staff Comments | 38 |
| Item 2. | Properties | 39 |
| Item 3. | Legal Proceedings | 39 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 40 |
| | Executive Officers of the Registrant | 40 |
| **PART II** | | |
| Item 5. | Market for the Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 42 |
| Item 6. | Selected Financial Data | 43 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 45 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 63 |
| Item 8. | Financial Statements and Supplementary Data | 64 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 97 |
| Item 9A. | Controls and Procedures | 97 |
| Item 9B. | Other Information | 101 |
| **PART III** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 101 |
| Item 11. | Executive Compensation | 101 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 101 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 102 |
| Item 14. | Principal Accounting Fees and Services | 102 |
| **PART IV** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 102 |
| SIGNATURES | | 106 |

*Explanatory Notes*

Unless the context requires otherwise, in this annual report the terms "we," "us" and "our" refer to DJO Incorporated, formerly dj Orthopedics, Inc., DJO, LLC, formerly dj Orthopedics, LLC, a wholly owned subsidiary of DJO Incorporated, and our other wholly owned and indirect subsidiaries.

This annual report includes market share and industry data and forecasts that we obtained from industry publications and surveys, primarily by Frost & Sullivan, and internal company surveys. Frost & Sullivan was commissioned by us to provide certain industry and market data. Industry publications, surveys and forecasts generally state that the information contained therein has been obtained from sources believed to be reliable, but there can be no assurance as to the accuracy or completeness of included information. We have not independently verified any of the data from third-party sources nor have we ascertained the underlying economic assumptions relied upon therein. While we are not aware of any misstatements regarding the industry and market data presented herein, such data involve risks and uncertainties and are subject to change based on various factors, including those discussed under the heading "Risk Factors" in this annual report.

This annual report on Form 10-K contains, in addition to historical information, statements by us with respect to our expectations regarding future financial results and other aspects of our business that involve risks and uncertainties and may constitute forward-looking statements within the meaning of Section 27A of the Securities Act and Section 21E of the Exchange Act. These statements reflect our current views and are based on certain assumptions. Actual results could differ materially from those currently anticipated as a result of a number of factors, including material risks discussed under the heading "Risk Factors" in this annual report. If the expectations or assumptions underlying our forward-looking statements prove inaccurate or if risks or uncertainties arise, actual results could differ materially from those predicted in any forward-looking statement.

## Part I

### Item 1.  Business

### Overview

We are a global provider of solutions for musculoskeletal and vascular health, specializing in rehabilitation and regeneration products for the non-operative orthopedic, spine and vascular markets. We believe that we have a leading market share in the non-operative orthopedic, spine and vascular markets that we target. During 2006 we significantly increased both our domestic and international revenues with the acquisition in January 2006 of Newmed SAS, a French orthopedics company trading under the name "Axmed" (the "Axmed acquisition"), and the acquisition in April 2006 of Aircast Incorporated, a U.S. based orthopedics company with extensive operations in Europe (the "Aircast acquisition"). With contribution from these acquisitions, our consolidated revenues grew 44.3% to $413.1 million from 2005 to 2006.

Marketed under the DonJoy, ProCare and Aircast brands, our broad range of over 700 rehabilitation products, including rigid knee braces, soft goods and pain management products, are used in the prevention of injury, in the treatment of chronic conditions and for recovery after surgery or injury. Our regeneration products consist of bone growth stimulation (BGS) devices that are used to treat nonunion fractures and as an adjunct therapy after spinal fusion surgery. Our vascular systems products help prevent deep vein thrombosis and pulmonary embolism that can occur after orthopedic and other surgeries.

We sell our products in the United States and in more than 70 other countries through networks of agents, distributors and our direct sales employees that market our products to orthopedic and spine surgeons, podiatrists, orthopedic and prosthetic centers, third-party distributors, hospitals, surgery centers, pharmacies, physical therapists, athletic trainers and other healthcare professionals. We believe that we have one of the largest distribution networks in the markets we participate in for non-operative orthopedic spine and vascular products. We believe that this distribution network, along with our recognized brand names, reputation for quality, innovation and customer service, and our strong relationships with orthopedic professionals have contributed to our leading market position.

Our business is seasonal, with revenues generally stronger in the fourth quarter of each year due to the greater number of orthopedic surgeries and injuries resulting from increased sports activity, particularly football and skiing. In addition, during the fourth quarter, individuals are more likely to have satisfied their annual insurance deductible than in the first three quarters of the year, and this leads to an increase in the number of elective orthopedic surgeries.

We were incorporated in Delaware in August 2001. Our headquarters are located at 1430 Decision Street, Vista, California 92081. Our telephone number is (800) 336-5690. Our website address is *www.djortho.com* .

The following table summarizes certain of the Company's operating results by quarter for 2006 and 2005:

|  | Year Ended December 31, 2006 | | | | |
|---|---|---|---|---|---|
|  | First Quarter | Second Quarter | Third Quarter | Fourth Quarter | Total Year |
|  | (In thousands, except per share data and operating days) | | | | |
| Net revenues | $ 82,563 | $ 106,525 | $ 113,205 | $ 110,765 | $ 413,058 |
| Gross profit | 50,854 | 63,613 | 67,865 | 64,620 | 246,952 |
| Income from operations | 11,812 | 10,738 | 14,302 | 8,689 | 45,541 |
| Net income | $ 5,981 | $ 1,292 | $ 4,359 | $ 1,009 | $ 12,641 |
| Basic net income per share | $ 0.27 | $ 0.06 | $ 0.19 | $ 0.04 | $ 0.55 |
| Diluted net income per share | $ 0.26 | $ 0.06 | $ 0.18 | $ 0.04 | $ 0.54 |
| Number of operating days | 64 | 64 | 63 | 61 | 252 |

|  | Year Ended December 31, 2005 | | | | |
|---|---|---|---|---|---|
|  | First Quarter | Second Quarter | Third Quarter | Fourth Quarter | Total Year |
|  | (In thousands, except per share data and operating days) | | | | |
| Net revenues | $ 70,250 | $ 68,827 | $ 72,133 | $ 74,957 | $ 286,167 |
| Gross profit | 44,029 | 44,254 | 45,632 | 46,963 | 180,878 |
| Income from operations | 12,421 | 13,022 | 13,926 | 14,490 | 53,859 |
| Net income | $ 6,597 | $ 6,929 | $ 7,536 | $ 8,136 | $ 29,198 |
| Basic net income per share | $ 0.31 | $ 0.32 | $ 0.34 | $ 0.37 | $ 1.34 |
| Diluted net income per share | $ 0.29 | $ 0.31 | $ 0.33 | $ 0.35 | $ 1.29 |
| Number of operating days | 65 | 64 | 63 | 61 | 253 |

**Item 9.    Changes in and Disagreements with Accountants on Accounting and Financial Disclosure**

Not applicable.

**Item 9A.    Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the timelines specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that any controls and procedures, no matter how well designed and operated, can only provide reasonable assurance of achieving the desired control objectives, and in reaching a reasonable level of assurance, management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

Under the supervision and with the participation of our management, including our Chief Executive Officer and our Chief Financial Officer, we carried out an evaluation of the effectiveness of the our disclosure controls and procedures (as such term is defined in SEC Rules 13a-15(e) and 15d-15(e)) as of December 31, 2006. Based on such evaluation, such officers have concluded that, as of December 31, 2006, our disclosure controls and procedures were not effective because of the identification of a material weakness in our internal control over financial reporting as described below. Based on a number of factors, including our performance of additional procedures as discussed under "Management's Remediation Efforts" below, our management has concluded that the consolidated financial statements included in Part II, Item 8 of this Form 10-K fairly present, in all material respects, our financial position, results of

operations and cash flows for the periods presented in conformity with generally accepted accounting principles (GAAP). The unqualified opinion of our independent registered public accounting firm on our financial statements as of and for each of the years in the three year period ended December 31, 2006 is included in Part II, Item 8 of this Form 10-K.

*Management's Report on Internal Control over Financial Reporting*

Internal control over financial reporting refers to the process designed by, or under the supervision of, our Chief Executive Officer and Chief Financial Officer, and effected by our board of directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles, and includes those policies and procedures that:

(1) Pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of our assets;

(2) Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that our receipts and expenditures are being made only in accordance with authorizations of our management and directors; and

(3) Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting cannot provide absolute assurance of achieving financial reporting objectives. Internal control over financial reporting is a process that involves human diligence and compliance and is subject to lapses in judgment and breakdowns resulting from human failures. Internal control over financial reporting also can be circumvented by collusion or improper management override. Because of such limitations, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. However, these inherent limitations are known features of the financial reporting process. Therefore, it is possible to design into the process safeguards to reduce, though not eliminate, this risk. Management is responsible for establishing and maintaining adequate internal control over our financial reporting. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become ineffective because of changes in conditions or that the degree of compliance with established policies or procedures may deteriorate.

Management assessed the effectiveness of our internal control over financial reporting as of December 31, 2006 using the framework set forth in the report entitled *Internal Control—Integrated Framework* published by the Committee of Sponsoring Organizations (COSO) of the Treadway Commission. We completed the acquisitions of Axmed in January 2006 and Aircast in April 2006, as more fully described in Note 3 to the consolidated financial statements included in Part II, Item 8 herein. As part of our ongoing integration activities, we are in the process of incorporating the operations of Axmed and Aircast into our controls and procedures and we expect to complete the process by no later than January 2, 2007 for Axmed and April 7, 2007 for Aircast. Management has excluded from its evaluation of the effectiveness of its internal control over financial reporting as of December 31, 2006 certain elements of the internal control over financial reporting of Axmed and Aircast, which constituted approximately $19.2 million and $43.9 million of net revenues for Axmed and Aircast, respectively, for the year ended December 31, 2006 and $10.0 million and $16.4 million of total assets for Axmed and Aircast, respectively, as of December 31, 2006. We plan to include these businesses into our assessment of the effectiveness of our internal controls within one year of each respective acquisition.

In conducting its assessment, management identified a material weakness in internal control over financial reporting as of December 31, 2006. A material weakness is a control deficiency, or combination of control deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financial statements will not be prevented or detected.

As of December 31, 2006, we had a control deficiency regarding the transfer and integration of inventory from Aircast which took place in the fourth quarter of 2006. During the course of our independent registered public accounting firm's audit of our financial statements for the year ended December 31, 2006, it was determined that we did not perform adequate detailed procedures with regards to inventory in-transit and the reconciliation of the related intercompany transactions. Our performance of additional detailed procedures resulted in adjustments to the inventory and costs of goods sold which were material to net income. Such adjustments have been recorded by us in our financial statements included in Part II, Item 8 of this Form 10-K. This control deficiency results in a more than remote likelihood that a material misstatement of the annual or interim financial statements would not be prevented or detected on a timely basis by employees during the normal course of performing their assigned functions. Therefore, management has concluded that our internal control over financial reporting was not effective as of December 31, 2006.

Ernst & Young LLP, our independent registered public accounting firm, has issued an attestation report on management's assessment of our internal control over financial reporting which is included below.

*Management's Remediation Efforts*

Subsequent to the year ended December 31, 2006, management remediated the control deficiency described above by implementing controls requiring the preparation and review of detailed analyses and reconciliations of in-transit inventory and related intercompany accounts. These analyses and reconciliations were completed for the transfer of the Aircast inventory in early February 2007.

*Changes in Internal Control over Financial Reporting*

Other than the operating control deficiency described above and other than as set forth above with respect to our recent acquisitions, there has been no change to our internal control over financial reporting during our most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

99

# REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM
## ON INTERNAL CONTROL OVER FINANCIAL REPORTING

The Board of Directors and Stockholders
DJO Incorporated

We have audited management's assessment, included in the accompanying Management's Report on Internal Control over Financial Reporting, that DJO Incorporated did not maintain effective internal control over financial reporting as of December 31, 2006, based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). DJO Incorporated's management is responsible for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting. Our responsibility is to express an opinion on management's assessment and an opinion on the effectiveness of the company's internal control over financial reporting based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our audit included obtaining an understanding of internal control over financial reporting, evaluating management's assessment, testing and evaluating the design and operating effectiveness of internal control, and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As indicated in the accompanying DJO Incorporated Inc. Management's Report on Internal Control over Financial Reporting, management's assessment of and conclusion on the effectiveness of internal control over financial reporting did not include the internal controls of Newmed SAS ("Axmed") and AirCast Incorporated ("Aircast") which were acquired in 2006 and are included in the 2006 consolidated financial statements of the Company and constituted: approximately $19.2 million and $43.9 million of net revenues for Axmed and Aircast, respectively, for the year ended December 31, 2006 and $10.0 million and $16.4 million of total assets for Axmed and Aircast, respectively, as of December 31, 2006. Our audit of internal control over financial reporting of the Company also did not include an evaluation of the internal control over financial reporting of Axmed and Aircast.

A material weakness is a control deficiency, or combination of control deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financial statements

will not be prevented or detected. The following material weakness has been identified and included in management's assessment. The Company experienced control deficiencies regarding the transfer and integration of inventory from an acquired entity in the fourth quarter of 2006. During the course of the audit, it was determined the Company did not perform adequate detailed procedures with regards to inventory in transit and the reconciliation of the related intercompany transactions. Performance of additional detailed procedures by the Company resulted in adjustments to the inventory and costs of goods sold balances, which were recorded by the Company in its financial statements prior to their publication in this Annual Report. This material weakness was considered in determining the nature, timing, and extent of audit tests applied in our audit of the 2006 financial statements, and this report does not affect our report dated February 26, 2007 on those financial statements.

In our opinion, management's assessment that DJO Incorporated did not maintain effective internal control over financial reporting as of December 31, 2006, is fairly stated, in all material respects, based on the COSO criteria. Also, in our opinion, because of the effect of the material weakness described above on the achievement of the objectives of the control criteria, DJO Incorporated has not maintained effective internal control over financial reporting as of December 31, 2006, based on the COSO criteria.

/s/ ERNST & YOUNG LLP

San Diego, California
February 26, 2007

**Item 9B.    Other Information**

None.

## PART III

**Item 10.    Directors, Executive Officers and Corporate Governance**

The Company's Code of Business Conduct and Ethics and Corporate Governance Guidelines can be accessed on the Company's website under the investor relations page, and are available in print to stockholders who submit a written request to the Secretary of the Company at the address of the Company's principal executive offices. In addition, the Audit, Compensation and Nominating and Corporate Governance Committees have each adopted a charter governing the activities of such committee. In accordance with New York Stock Exchange rules, these documents are also available either on the Company's website or by written request no later than the date of the Company's 2007 Annual Stockholders Meeting.

The other information under Item 10 is hereby incorporated by reference from DJO Incorporated's Definitive Proxy Statement to be filed with the Securities and Exchange Commission on or prior to April 30, 2007. See also the identification of the Executive Officers following Item 4 of this Form 10-K.

**Item 11.    Executive Compensation**

Item 11 is hereby incorporated by reference from DJO Incorporated's Definitive Proxy Statement to be filed with the Securities and Exchange Commission on or prior to April 30, 2007.

**Item 12.    Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters**

Item 12 is hereby incorporated by reference from DJO Incorporated's Definitive Proxy Statement to be filed with the Securities and Exchange Commission on or prior to April 30, 2007.