UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
ANKL LIQUIDATING TRUST,

             Plaintiff,                  07-CV-10624 (JGK)

       - against -

                                          ECF Case

AIRCAST LLC, AIRCAST HOLDING COMPANY
LLC, and DJO, LLC,

            Defendants.

------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF ANKL LIQUIDATING TRUST'S FIRST THROUGH FIFTH, NINTH AND TENTH CLAIMS FOR RELIEF**

BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
(212) 705-7000
Attorneys for Defendants

A/72535686.3

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii
I. INTRODUCTION ........................................................................................................ 1
II. ARGUMENT................................................................................................................ 2
    A. The Opposition Does Not Revive ANKL's Defective Contract Claims ............... 2
        1. There Is No Factual Dispute ....................................................................... 2
        2. The Distinction between "Provide Access" and "Provide" Is a Meaningful One ........................................................................................ 3
        3. The 45-Day Period for ANKL to Dispute the Calculation Is Long Over............................................................................................................ 5
        4. This Court Is Not the Proper Forum for a Contract Claim for Damages...................................................................................................... 6
    B. The Fraud Claim Is Defective As A Matter Of Law .............................................. 6
        1. ANKL Disclaimed Reliance on Extra-Contractual Statements ................. 6
        2. The Fraud Allegations Do Not Comply with Rule 9(b) ............................ 8
        3. Punitive Damages Are Not Available to ANKL......................................... 9
III. CONCLUSION........................................................................................................... 10

A/72535686.3

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005) ................................................................. 3

*Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993) ........................................ 7

*Mead v. ReliaStar Life Ins. Co.*, No. 2:05-cv-332 (WKS), 2008 WL 850675 (D. Vt. Mar. 27, 2008) ................................................................................................. 4

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005) ....... 9, 10

## STATE CASES

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 154 N.Y.S.2d 599 (1959) .................... 7, 8

*Lusins v. Cohen*, 49 A.D.3d 1015, 853 N.Y.S.2d 685 (3d Dep't 2008) ............................ 10

*Zurich Am. Ins. Co. v. Whitmore Group, Ltd.*, No. 600058/04, 2006 WL 759685 (Sup. Ct. N.Y. Co. Feb. 7, 2006) ........................................................................... 10

A/72535686.3

## I. INTRODUCTION

ANKL's Opposition Memorandum (the "Opposition") fails to demonstrate that the First through Fifth, Ninth or Tenth Claims state a claim for relief.[1]

Each of ANKL's arguments suffers from fatal flaws. *First*, ANKL's July 19, 2006 letter did not "set[] forth in detail the particulars" of its disagreement with Defendants' calculation of the Net Sales for the Change of Control Period, and thus, pursuant to Section 1.8 of the APA, the calculation is deemed "final, binding and conclusive." The only stated basis for ANKL's disagreement was its observation that the calculated Net Sales number was "within 1.6% of the earnout target." This statement, while true, does not constitute a disagreement with the calculation at all. ANKL also attempts to avoid dismissal by saying that Defendants somehow breached the APA by not unilaterally sending ANKL whatever documents it could conceivably require to dispute the calculation without any request by ANKL for these documents. This argument deliberately confuses the distinction between "provid[ing] reasonable *access* to" relevant records, employees and audit workpapers – which is what the APA says must be provided – and "providing" relevant records, employees and audit workpapers – which is what ANKL pretends it says. *Second*, the fraud claim fails because ANKL, a sophisticated business entity, cannot refute the fact that it disclaimed reliance on any extra-contractual statements in the Settlement Agreement, yet is now claiming that it was fraudulently induced to sign that agreement by just such extra-contractual statements. Nor has ANKL demonstrated that its fraud claim, premised on the theory that Defendants lied when they allegedly said that the Net Sales target for 2005 had not been met, is pled with sufficient particularity. And its argument that punitive damages are available to it borders on the frivolous.

---

[1] Capitalized terms used herein have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss (the "Memo").

1

A/72535686.3

## II. ARGUMENT

### A. The Opposition Does Not Revive ANKL's Defective Contract Claims

ANKL's main argument on the contract claims relies on a single mistaken assumption – that "providing" a document is the same thing as "providing access" to that document. The language of the APA makes clear that this difference is real and meaningful.

#### 1. There Is No Factual Dispute

ANKL first attempts to avoid dismissal of the contract claims by arguing that the question of the sufficiency of its July 19, 2006 dispute letter is one of fact. Opp. at 3. ANKL is wrong. Defendants do not ask this Court make a factual determination. Rather, on its face, and as a matter of law, ANKL's July 19 letter does not "set[] forth in detail the particulars of" its disagreement concerning Net Sales. *See* APA § 1.8(d).

A determination of the sufficiency of the July 19 letter is one that this Court may make on a motion to dismiss. The APA sets the standard the letter had to meet. There is no dispute as to what the letter actually stated or when it was sent; therefore, there is no factual determination the Court must make in order to answer the legal question: Did ANKL provide enough detail as to the basis of its disagreement with Defendants' Net Sales calculation for the Change of Control Period?

The Opposition states that the July 19 letter informed Defendants *why* ANKL disagreed with the calculation, when in truth the letter only stated *the fact of* ANKL's disagreement – while simultaneously acknowledging that it lacked adequate information to know whether or not it actually disagreed with the calculation. The letter was not "as detailed as possible under the circumstances" (Opp. at 4), especially since ANKL alone created the circumstances. ANKL

cannot now be heard to excuse its failure to comply with the APA's requirement of specificity by pointing to its own decision to sit on its hands for 43 days before seeking relevant information.

        2.       The Distinction between "Provide Access" and "Provide" Is a Meaningful One

The only way that ANKL can argue that Defendants failed to provide it with "reasonable access to the employees who assisted in preparing [the Net Sales calculation], . . . [and] access to all of the records . . . reasonably related to" this calculation (APA § 1.8(d)) is by excising the word "access" from the APA entirely. While citing *Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005), for the proposition that a contract must be read as a whole and that "every part will be interpreted with reference to the whole" (*id.* at 228 (internal quotations omitted)), ANKL does precisely the opposite.

ANKL's position is that there is no difference between ***providing records*** and ***providing access*** to those records. In the Opposition, ANKL refers to Defendants' purported failure to provide records supporting the Net Sales calculation as an excuse for the lack of particularity of the July 19 letter (*e.g.*, at 5, 6, 9, 13). But no such standalone obligation exists – except as to the 2005 audited financial statements, which were provided to ANKL, as it concedes. The difference between the two concepts is axiomatic. ***Providing*** records means delivering them; providing ***access*** to records means allowing the other party to see them upon request.

ANKL's reading becomes even less plausible if access to Defendants' employees or the workpapers of their independent auditors, also afforded by Section 1.8(d), is considered. Under ANKL's reading that "provide access" means the same thing as "provide," the APA would require Purchasers to appear *sua sponte* at ANKL's office with the relevant employees in tow, and to remove workpapers from its auditors' offices and bring them to ANKL even though ANKL never asked for them. The parties never contemplated such absurd scenarios, and giving

meaning to the word "access" in section 1.8(d) is the only way to prevent such nonsensical obligations from being imposed on the Purchasers.[2]

ANKL also attempts to impose on Purchasers additional obligations not in the APA, or in any other agreement – namely, that "Earnout Obligors had a *duty to establish* how Earnout Obligors calculated Net Sales." Opp. at 5 (emphasis added). There is no basis for imposing such an obligation on the Purchasers. The APA requires them only to send ANKL the Net Sales calculation and to provide it with *access* to the relevant records, employees and workpapers. There is no requirement that Purchasers support the calculation absent a valid dispute notice by ANKL, which was never made here.[3]

ANKL also argues that, even if the phrase "provide access" required it affirmatively to request access to information, it did so when it finally requested a substantial amount of documents on the 43rd day of the 45-day dispute period. Opp. at 7. But this eleventh-hour request did not somehow relieve ANKL of its obligation to detail the particulars of its disagreement with Defendants within 45 days. As stated above, the purpose of the provision giving ANKL 45 days of access to the employees, records and workpapers relevant to the calculation was to allow ANKL to investigate the accuracy of the calculation and to allow it to provide a detailed dispute letter if it disagreed with Defendants' calculation. But ANKL did not ask for any information – the very thing necessary to provide a detailed dispute – until it sent the

---

[2] ANKL's criticism of *Mead v. ReliaStar Life Ins. Co.*, No. 2:05-cv-332 (WKS), 2008 WL 850675, at *6 (D. Vt. Mar. 27, 2008), regarding the meaning of "access" is unfounded. ANKL points to no case holding that "provide" and "provide access" have an identical meaning, particularly where the two are used in different contexts in the same contract. In any event, *Mead* simply stands for the common sense proposition that providing "access" does not require a party to immediately turn over a document unrequested. *See id*.

ANKL's argument that the "to the extent reasonably requested" language in APA Section 6.8 demonstrates that no request was necessary under Section 1.8(d) (Opp. at 6) is no more availing. In Section 6.8, which is not at issue here, that phrase qualifies the type of request to be made (*i.e.*, a reasonable one), not the need for it.

[3] Tellingly, ANKL acknowledges as much later in the Opposition, when it states, "Sellers had no means to evaluate and dispute the Earnout Obligors' calculation of Net Sales or any element of the financial statements" without reviewing the audit work and financial statements for the Change of Control Period. *Id*. at 9.

July 19 letter. ANKL's failure to take advantage of its access for more than six weeks after receiving the Net Sales calculation is no one's fault but its own. ANKL cannot reasonably assert that its failure to set forth the particulars of the dispute was excused because it chose to wait from June 6 to July 19 before even taking advantage of the access to which it was entitled.

The APA says that if ANKL wants to dispute the Net Sales calculation, it must do so within 45 days and with particularity. As a practical matter, this means that ANKL must act diligently within the 45-day period so that, by its end, it has requested, received, and reviewed the necessary information. If 45 days were just the period of time to *request* information, as ANKL posits, there would be *no* limit to how long it could take thereafter to actually dispute the calculation. That notion is completely at odds with the APA's clear mandate that any disagreement about the calculation must be articulated and detailed within a finite period of time.

3.  The 45-Day Period for ANKL to Dispute the Calculation Is Long Over

ANKL also mischaracterizes Defendants' argument regarding the start of the 45-day period for ANKL to dispute the calculation. The Opposition states that Defendants' argument is that because Defendants "did not have to provide audited financial statements for the Change of Control Period," the period has run. *Id.* at 9 (citing Memo. at 13-15).[4] That is not Defendants' position. The start of the 45-day period is tied to delivery of the Net Sales calculation to ANKL, and to nothing else. *See* APA § 1.8(d). There is no requirement that Defendants deliver all documents, or any documents, before the 45-day window opens.

---

[4] Defendants pointed out that ANKL's insistence that it was entitled to audited financial statements not only for 2005 (which it received) but for the first three months of 2006 is contradicted by the language of the APA, which does not require delivery of audited statements for any partial year period. Memo at 14. Thus, contrary to ANKL's position, because Purchasers were not required to provided audited partial year statements, the absence of such statements was not a breach of the APA that could excuse ANKL's failures.

4. This Court Is Not the Proper Forum for a Contract Claim for Damages

ANKL acknowledges, as it must, that an auditor must decide the issue of whether the Net Sales calculation is correct. *See* Opp. at 13. It is only if there is a determination that the Net Sales for the Change of Control Period exceeded the Acceleration threshold that ANKL would be entitled to an Earnout Payment. But it is precisely this Earnout Payment that ANKL asks this Court to award it in its First and Second Claims for relief. ANKL's arguments that this Court can decide whether Defendants breached any conditions precedent (Opp. at 12-14) and whether Defendants satisfied "production obligations" (*id.* at 14-15)[5] are irrelevant to the issue of whether this Court may award the Earnout in light of the arbitration provision. It may not. The core issue in this case – if ANKL properly preserved it – is whether Net Sales for the Change of Control Period exceeded the threshold. That issue is solely for the arbitrator to determine.

**B. The Fraud Claim Is Defective As A Matter Of Law**

1. ANKL Disclaimed Reliance on Extra-Contractual Statements

ANKL cites a recital in the preamble to the Settlement Agreement to support its claim that, notwithstanding its explicit disclaimer of reliance on any extra-contractual representations (Schacter Decl, Ex. B, § 3.1(c)), it relied on Geoffrey Raker's alleged statements to Elliot Levine that 2005 Net Sales would not exceed the earnout threshold for calendar year 2005. ANKL claims that "the Settlement Agreement contains express recitals establishing that when ANKL entered into the Agreement, it relied on defendants' representations about Aircast's financial performance. . . ." Opp. at 16. This must be contrasted with the actual language of the recital:

> . . . *the parties* anticipate that the Acceleration Conditions will not be satisfied as of the dj Purchase Agreement Closing and, as a

---

[5] Notwithstanding ANKL's failure to provide a valid dispute notice, Defendants have offered several times – including before this Court at the status conference on March 4, 2008, and in letters attached as Exhibits F and I to the Schacter Declaration – to provide the requested documentation supporting the Net Sales Calculation. As this Court is aware, ANKL has consistently rejected that offer.

A/72535686.3                                   6

> result, the dj Purchase Agreement Closing is not expected to result in the Earnout Obligations Acceleration.

Schacter Decl. Ex. B, ¶ E (emphasis supplied). On its face, the recital reflects the *joint* belief of both Defendants and ANKL. It does not suggest, as stated in the Opposition, that Defendants made any representation to ANKL on the subject, or that ANKL relied on any representation by Defendants. This is another example of ANKL attempting to change the actual words used in the agreements to conform to what ANKL now wants rather than accept that the contract language was chosen to produce a different result.

ANKL's argument that a "general merger clause" does not bar a fraud claim (Opp. at 16) is true as far as it goes – but is irrelevant here because the Settlement Agreement's disclaimer of extra-contractual representations is not a "general merger clause." This point is illustrated by the case on which ANKL principally relies, *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993). In *Yanakas*, the clause at issue was "a generalized boilerplate exclusion" in a "preprinted form." *Id.* at 317. Moreover, the clause in *Yanakas* did not disclaim extra-contractual representations at all but said only that the defendant-borrower "absolutely and unconditionally guarantees" payment of a debt owed to a bank. *Id.* The provisions at issue here are completely different (and entirely mutual). In these clauses, after reciting a number of specific circumstances, **all** of the parties mutually disclaimed reliance on any undisclosed inducements not found in the Settlement Agreement. Schacter Decl., Ex. B §§ 3.1, 3.2, 3.3.

The other case cited by ANKL in support of its argument that a general merger clause does not bar a claim for fraudulent inducement is no more helpful to it. In *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 154 N.Y.S.2d 599 (1959), the Court of Appeals considered a clause disclaiming representations made in a real estate transaction. The clause in *Danann* includes language nearly identical to the corresponding provision in the Settlement Agreement. Both

specify certain representations that the parties were making and disclaim reliance on any representation not contained in the contract. *Id.* at 320. In reversing the Appellate Division and dismissing the fraud claim, the Court of Appeals focused on the disclaimer of reliance on any representations outside the contract, the absence of any allegation that the contract was not read by the purchaser, and a presumption that the purchaser's officers "read the contract and were aware of the provision by which they aver that [the purchaser] did not rely on such extra-contractual representations." *Id.* at 321.

It is difficult to see how *Danann* helps ANKL. As in *Danann*, the parties here made certain representations and specifically (and mutually) disclaimed reliance on any extra-contractual statements. Settlement Agreement, § 3.1. There is no allegation that ANKL did not read or understand this provision before signing the Settlement Agreement. Indeed, ANKL itself alleges this Settlement Agreement was negotiated over a period of months. (Compl. ¶ 95). Nor does the Settlement Agreement's recital regarding the parties' common belief that 2005 Net Sales would be below the threshold undermine this position. The Settlement Agreement was negotiated and executed prior to the end of the Change of Control Period and prior to the completion of the 2005 audited financial statements. The merger clause thus bars ANKL's fraud claim. *See Danann*, 5 N.Y.2d at 322-23.

2.   The Fraud Allegations Do Not Comply with Rule 9(b)

The sole bases for ANKL's allegation that Mr. Raker acted with *scienter*[6] in stating that 2005 Net Sales were below the Earnout threshold for 2005 appear to be that (1) the Net Sales figure reported in the 2005 audited financial statements was slightly different from the Net Sales calculation reported to ANKL (though ANKL concedes that both were below the Earnout

---

[6] ANKL's argument about whether Mr. Raker's personal knowledge is relevant (Opp. at 20) is misplaced. The Complaint contains no allegation that any of Defendants knew that Mr. Raker would make such a statement. This too falls short of the pleading requirement of Rule 9(b).

Payment threshold, and the difference between the two Net Sales figures is much smaller than the gap between either one and the Earnout threshold); and (2) a statement in DJO's *2006* SEC Form 10-K that auditors found a material weakness in DJO's internal controls that resulted in some adjustments to inventory and cost of goods sold. *See* Opp. at 20-21.

As to the first allegation, ANKL does not allege that either of the slightly different Net Sales numbers was above the Earnout threshold. It appears that ANKL is relying on the same "close but not quite" argument used to justify disputing the Net Sales calculation in the first place. *See* Schacter Decl., Ex. E. As to the argument regarding the DJO's 2006 10-K, there is no basis for ANKL's conjecture that "although this Annual Report was for 2006, it is reasonable to believe that Aircast also was not properly accounting for inventory and costs of goods sold in 2005 . . ." (Opp. at 21), or for inferring that there is any relationship between the material weaknesses cited therein and the calculation of Net Sales. The 10-K was DJO's, not Aircast's, and there is no indication whatsoever that the internal controls issue even related to the Aircast portion of the business.

        3.    Punitive Damages Are Not Available to ANKL

ANKL's argument that it is entitled to punitive damages here is based entirely on *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005). Opp. at 22. Its reliance is misplaced. ANKL cites *Topps* for black-letter legal principles but ignores the case's holding: when the claim for punitive damages "arises from" or "has its genesis in" a contractual relationship, one of the elements required to support punitive damages is "a gross and wanton fraud upon the public" – an element that, as ANKL concedes, is absent here. *Topps*, 380 F. Supp. 2d at 266 (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 406, 223 N.Y.S.2d 488 (1961)) (where there was a pre-existing contractual relationship, punitive damages not available on plaintiff's fraud claim absent egregious conduct). ANKL claims that it was fraudulently induced

to enter into the Settlement Agreement. Everyone agrees that the parties had a pre-existing contractual relationship pursuant to the APA. Absent allegations of "gross and wanton fraud upon the public," ANKL cannot recover punitive damages. *See Topps*, 380 F. Supp. 2d at 266.[7]

## III.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' opening Memorandum, Defendants respectfully request this Court dismiss the First through Fifth, Ninth and Tenth Claims for Relief.

Dated: New York, New York
       May 16, 2008

**BINGHAM MCCUTCHEN LLP**

By: s/ Kenneth I. Schacter
    Kenneth I. Schacter
    Theo J. Robins
    399 Park Avenue
    New York, NY  10022-4689
    Telephone: (212) 705-7000
    Facsimile:  (212) 752-5378
    kenneth.schacter@bingham.com

    *Attorneys for Aircast LLC, Aircast Holding Company LLC and DJO, LLC*

---

[7] ANKL's arguments on the negligent misrepresentation (Fourth) and conversion (Ninth) claims similarly lack merit. The Opposition misses the point of *Lusins v. Cohen*, 49 A.D.3d 1015, 853 N.Y.S.2d 685 (3d Dep't 2008), which holds that privity creates a "special relationship" where it is a lawyer-client or accountant-client relationship. *Id.* at 688. Where, as here, privity is in the context of an arms' length business relationship, there is no basis for maintaining a negligent misrepresentation claim. *See* Memo at Part III.E.

ANKL's argument in support of its conversion claim (Opp. at 24-25) is no more compelling. Unlike in *Zurich Am. Ins. Co. v. Whitmore Group, Ltd.*, No. 600058/04, 2006 WL 759685, at *5 (Sup. Ct. N.Y. Co. Feb. 7, 2006), which simply stands for the general proposition that a conversion claim can be separate from a contract claim, here, plaintiff specifically relies on, and indeed cites to, the provisions of the APA to demonstrate its entitlement to the various bank accounts and documents. (Compl. ¶¶ 59-60, 147, 150). Its conversion claim is premised on its contractual rights and must be dismissed.